# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TOMMIE R. THOMAS,

    Plaintiff,

v.

ST. CLAIR COUNTY, et al.

    Defendants,

and

ST. CLAIR COUNTY, ET AL.,

    Cross-Plaintiffs,

v.

PROJECT CONTROL SYSTEMS, INC. (PCSI),
and TINDALL, CORP.,

    Cross-Defendants.

_____/

CASE NO. 08-12202

HON. MARIANNE O. BATTANI

## OPINION AND ORDER DENYING DEFENDANTS SHAUN GRODEN, TROY FELTMAN, DAN LANE, TOM TORREY'S REQUEST FOR QUALIFIED IMMUNITY

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 114). The Court heard oral argument on June 8, 2010, the Court granted in part and denied in part Defendants' Motion for Summary Judgment. The Court took the issue of qualified immunity relative to the 42 U.S.C. § 1983 claim under advisement, pending mediation. A trial date of November 30, 2010, has been set; consequently, the Court renders a decision on the merits of the claim. For the reasons that follow, the Court **DENIES** Defendants' request for qualified immunity.

**I. STATEMENT OF FACTS**

Plaintiff Tommie Thomas filed this action after he was injured while incarcerated at the St. Clair County Jail. Specifically, on May 18, 2007, Plaintiff was injured when the top bunk detached from a wall in his prefabricated cell unit at the St. Clair County Jail and struck him. Plaintiff alleges that jail personnel had been aware of cracks in cell walls and bunk beds pulling loose from walls. According to Plaintiff, the individual defendants, including Shaun Groden, who replaced Defendant Troy Feltman as the County Administrator in January 2005, Dan Lane, who is the County Sheriff, Tom Torrey, who is a Deputy Sheriff and the Jail Administrator, and Jane McCormick, who is a Deputy Sheriff, were all in the chain of command for addressing the bed issues. Doc. No. 121, Ex. 2 at 17-18.

The jail, which began housing inmates in October 2005, was constructed with prefabricated cell units that were designed, manufactured, and sold with installed bunk beds. The bunk beds were anchored to the cell walls, unsupported by legs or other devices. Doc. No. 114, Ex. B at 13. Less than three months later, in January 2006, jail personnel noticed that two cells had "spider" cracking in the concrete, bolts separated from the wall, and concrete falling out of the wall. Id. at 19-20.

From January 2006 through May 2007, Tindall Corporation (Tindall), the company that produced the cells, periodically sent employees to the jail and repaired the damage. Id. at 20. From the outset, Groden was suspicious about Tindall's assertion that the cells were damaged as a result of shipping and inquired about testing the bunks with "big

inmates." Doc. No. 121, Ex. 6. In March 2006, Loton Eastman, a representative of the County, recommended legs and stanchions be added to the beds. Doc. No. 121, Ex. 7. That never happened, although in January 2007, Sheriff Lane made it "very evident" that he wanted legs put on the bunks, Doc. No. 114, Ex. B at 33, and Tindall agreed to install legs on the bunks. Id., Ex. E at 108.

Although Tindall undertook repair, testing, and maintenance of the cell's walls and the bunk beds, the problems continued. The record contains numerous exhibits detailing the repeated repairs, testing, and the involvement of a third-party experts to evaluate the concrete. See e.g. Doc. No. 121, Ex. 10,12-14, Doc. No. 114, Ex. B at 23-24, Ex. C at 54. In late 2006, the County refused to accept any more assurances from Tindall, and withheld money for payment.

In early 2007, additional cracking in the walls occurred. Id. at 33. Nevertheless, Defendants continued to recommend and approve occupancy of the cells and bunk beds by inmates until the time Thomas was injured.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure authorize this Court to grant summary judgment "if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact if there is no factual dispute that would affect the legal outcome of the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch Inc.,

3

517 F.3d 321, 332 (6th Cir. 2008). However, a party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2).

## III. ANALYSIS

Plaintiff asserts that these Defendants violated 42 U.S.C. § 1983, specifically the Eighth Amendment, in that they were deliberately indifferent to Plaintiff's right to be free from cruel and unusual punishment. Defendants argue that they are entitled to qualified immunity on this cause of action.

In general, government officials are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Government officials will not be held liable for mere mistakes in judgment, whether the mistake is in law or in fact. Groh v. Ramirez, 540 U.S. 551, 567 (2004).

The United States Supreme Court has set forth a two-prong test[1] to determine whether a defendant is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 200 (2001). The first prong requires the reviewing court to inquire whether the facts, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." Id. at 201. The court must "concentrate at the outset on the definition

---

[1] The Court recently reiterated the benefits of the Saucier test in determining qualified immunity, but held that courts need not apply the analysis in a rigid two-step sequence Pearson v. Callahan, 129 S.Ct. 808, 811 (2009)

4

of the constitutional right and [then] determine whether on the facts alleged, a constitutional violation could be found." Id.  If a constitutional violation could be found, the second prong requires the court to decide whether a reasonable official would, at the time the act was committed, understand that his conduct violated that right.  Id.  In sum, a government official will be entitled to immunity as long as the conduct does not amount to a violation of a clearly established right of which a reasonable person would have known.  Harlow, 457 U.S. at 818.  A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted."  Saucier, 533 U.S. at 202.

### A. Has Plaintiff Suffered a Deprivation of a Constitutional Right?

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Under the language of the statute, to succeed on a § 1983 claim, a plaintiff must prove that a person deprived him of a federal right and that person acted under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

There is no dispute that these Defendants were acting under color of state law. Accordingly, the Court begins its analysis of this claim with the identification of the specific constitutional right allegedly violated by Defendants.  See Graham v. Connor, 490 U.S. 386, 394 (1989).  For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official

5

acted with " 'deliberate indifference' to inmate health or safety." <u>Mingus v. Butler</u>, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)). Deliberate indifference "entails something more than mere negligence," <u>Farmer</u>, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." <u>Id.</u> Under <u>Farmer</u>, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837.

Here, Defendants contend that Plaintiff suffered no deprivation because "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, [and] only extreme deprivations will make out a conditions-of-confinement claim." <u>Hudson v. MacMillan</u>, 503 U.S. 1, 9 (1992). Further, Thomas cannot show that Defendants acted with a "sufficient culpable state of mind." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

The Court finds that Plaintiff suffered more than "routine discomfort" and that the conditions of the bunks in the jail posed a sufficiently serious rise to Thomas' safety. Therefore, the Court directs its attention to the issue of deliberate indifference.

"Deliberate indifference" has both an objective and a subjective component. <u>Perez v. Oakland County</u>, 466 F.3d 416, 423 (6th Cir. 2006). In order to establish the subjective component, the plaintiff must present evidence that the prison official was subjectively aware of, and disregarded, the risk of harm to the prisoner. <u>Id.</u> at 424. In other words,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

6

Farmer, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842. But, a prison official who was not aware of a substantial risk of harm may not be held liable under the Eighth Amendment, even if the risk was obvious and a reasonable official would have noticed it. Id. at 841-42.

In support of their position, Defendants rely on Crist v. Warden Wolfe, No. 86 C 5021, 1986 WL 9555 (N. D. Ill. Aug. 21, 1986), a case wherein an inmate was injured when a bed collapsed on him. In dismissing the complaint, the district court noted that the plaintiff failed "to allege any facts to show that [the] defendants had reason to know, let alone actual knowledge, of impending harm resulting from the condition of his bed." Id. at *2. Further, the beds, which were held together with torn pieces of sheets, had never caused another injury. Therefore, the court concluded that the defendants' mere knowledge of the condition of the bed was not enough to impute to them deliberate indifference to the plaintiff's physical safety.

Although the injury in this case was caused in a similar manner as in Crist, the facts relevant to knowledge are distinguishable. The upper bunks weighed over 150 pounds and were located directly over the lower bunks. Further, Defendants knew of the risk of impending harm. Defendants had refused to rely on Tindall's assurances that the problems had been corrected because cells that already had been repaired or were deemed safe had subsequently cracked. The problems were ongoing and safety issues had been identified for over a year. The Sheriff had demanded that legs be added to the bunks at the

7

recommendation of the county engineer months before the incident occurred.

Here, viewed in the light most favorable to Plaintiff, Defendants knew about the risk of the beds begin inadequately secured to the walls, that many had come loose, even after the repairs by Tindall, and that an employee of the County had recommended that legs be attached to the bunks. Further, the risk of harm should the cell dislodge was high. Accordingly, the Court finds Thomas has met his burden to advance evidence, which viewed in the light most favorable to him, shows a violation under the Eighth Amendment.

### B. Was the Right Clearly Established?

Even if Thomas suffered a deprivation of a constitutional right, Defendants posit that Plaintiff cannot show that Defendants Groden, Feltman, Lane, Torrey, and McCormick knew their actions deprived Thomas of his constitutional rights. These Defendants were never on notice that their conduct was wrong. The Court disagrees.

The test for whether an official is entitled to qualified immunity is one of "objective reasonableness," which requires "a reasonably competent public official [to] know the law governing his conduct." Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). Moreover, the right alleged to have been violated must have been "clearly established" in a particularized sense: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted). Therefore, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002).

In determining whether the law was clearly established, courts examine "federal constitutional, statutory or case law existing at the time." Dominque v. Telb, 831 F.2d 673, 677 (6th Cir. 1987). The Court looks "first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within [the Sixth Circuit], and finally to cases from other circuits. Higgason v. Stephens, 288 F.3d 868, 876 (6th Cir. 2002).

Here, the Court finds Defendants had clear warning in light of prior case law, that their conduct, viewed in the light most favorable to Plaintiff, violated the Eighth Amendment. Notably, in Brown v. Bargery, 207 F.3d 863 (6th Cir. 2000), the appellate court found a prisoner's allegations about "the unsafe sleeping environment in which the improperly installed bunks caused inmates to slide off their bunks and land on the concrete cell floor and subjected inmates to the hazzards of rolling into protruding anchor bolt studs" stated a claim. The appellate court analogized the allegations to those addressed by the Supreme Court in Helling v. McKinney, 509 U.S. 25, 28 (1993). The plaintiff in Helling, alleged that prison officials "had violated his Eighth Amendment rights by forcing him to share a cell with another inmate who smoked five packs of cigarettes a day." Brown, 207 F.3d at 867. That the Eighth Amendment affords protections to inmates from unsafe conditions in their cells is well established.

## IV. CONCLUSION

Accordingly, the Court **DENIES** the request for qualified immunity.

9

**IT IS SO ORDERED**.

                                                          s/Marianne O. Battani
                                                          MARIANNE O. BATTANI
                                                          UNITED STATES DISTRICT JUDGE

Dated: October 25, 2010

CERTIFICATE OF SERVICE

    Copies of this Order were served upon counsel of record on this date by electronic mailing and/or ordinary mail.

                                                          s/Bernadette M. Thebolt
                                                          Case Manager